UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

M.H.C.,
 an infant, by Janet H. Caudle,
 his next friend,

       Plaintiff,

v.                                                           Civil Action No. 3:07cv562

CCB OF STONY POINT, et al.,

       Defendants.

**MEMORANDUM OPINION**

      Plaintiff, M.H.C., by and through his parent and next friend, Janet H. Caudle, filed a Complaint in the Circuit Court for the City of Richmond, alleging that he sustained injuries on the premises of CCB of Stony Point, LLC ("Cheesecake Bistro"), trading as Copeland's Cheesecake Bistro Restaurant Bakery and Bar, and The Taubman Company, LLC ("Taubman"), the owner and operator of Stony Point Fashion Park, where Cheesecake Bistro operates. Cheesecake Bistro, a Louisiana limited liability company, and Taubman, a Delaware limited liability company, removed the suit to this Court pursuant to 28 U.S.C. § 1441, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.[1] Cheesecake Bistro filed a Motion for Summary Judgment, arguing that it has rebutted the presumption that M.H.C., an eleven-year-old at the time of the accident, was incapable of negligence, and that M.H.C. was contributorily negligent because the fence that caused M.H.C.'s injuries was open

---

[1] Pursuant to the Court's January 28, 2008 Order, Taubman no longer is a party to this action.

1

and obvious. (Docket No. 11.) Plaintiff responded and Cheesecake Bistro filed a reply. The Court also held a hearing on this matter. Accordingly, the motion is ripe for adjudication.

## I. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## II. Facts

On December 4, 2004, at around 4:15 p.m., M.H.C. went to Cheesecake Bistro with his mother, his two friends, V.B. and C.M., and their mothers. After the boys finished eating, they went outside immediately behind Cheesecake Bistro to play while their mothers continued eating. After the boys played tag for ten to twenty minutes, M.H.C. fell. M.H.C. remembers chasing V.B. when the accident occurred, but does not remember if he tripped or fell on something. C.M. remembers that M.H.C. bumped into a woman before falling on the fence. V.B. remembers that M.H.C. "was trying to reach through the fence or in some way his arm was going through the fence, and he may have stumbled beforehand." (V.B. Dep. 11:21-24.) As M.H.C. fell, he hit his arm on a fence post. M.H.C. fell to the ground and did not realize that he was hurt until he was walking back into Cheesecake Bistro.

After the accident, M.H.C. went to the emergency room. M.H.C. received a total of twenty stitches, some of which were internal. M.H.C.'s arm became infected. With antibiotics, the infection went away eventually. There was difficulty removing the stitches from M.H.C.'s arm.

At the time of the accident, M.H.C. was eleven years old and in the sixth grade. He attended Manchester Middle School and was part of the Center Based Gifted Program ("C.B.G."). To enroll in C.B.G., students must take a test, have a certain grade point average, and have at least one teacher recommendation. M.H.C. describes C.B.G. as classes for "gifted kids," and believes his IQ to be "133-ish." (M.H.C. Dep. 8:16, 9:5.) M.H.C.'s mother states that her son is "very good at science and math . . . he does double-accelerated math, and he's taken advanced placement courses in science." (J. Caudle Dep. 15:19-22.) M.H.C.'s father agrees that

his son "was an intelligent young man when [] he was 11" and that he would know he would hurt himself "if he realized it was a pointed fence post." (B. Caudle Dep. 29:18-30:22.)

Before the accident, M.H.C. had been to Cheesecake Bistro, but had never eaten in the outside area. M.H.C. did not believe the fence was dangerous before the accident. M.H.C. also did not observe or otherwise inspect the fence closely before the accident. C.M. admits seeing the spikes on the fence, but states that the boys did not pay attention or think anything about them. C.M.'s mother had seen the fence before the accident. However, she and her husband did not know that the fence was sharp until they inspected it after the accident.

### III. Discussion

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938). When contributory negligence becomes a defense in cases involving children, the party raising the defense faces "two independent burdens of proof." *Endicott v. Rich,* 348 S.E.2d 275, 279 (Va. 1986). This is so because, "[i]n Virginia, 'the law presumes a child between the ages of seven and fourteen to be incapable of committing acts of negligence, and . . . the burden is on the opposite party to overcome this presumption, unless such capacity is disclosed by plaintiff's own evidence.'" *Norfolk & Portsmouth Belt Line R.R. Co. v. Barker*, 275 S.E.2d 613, 616 (Va. 1981) (citation omitted). Thus, Cheesecake Bistro must first rebut the presumption that M.H.C. was incapable of negligence. Defendant can do so "by showing that the plaintiff did have the capacity to understand the peril." *Va. Elec. & Power Co. v. Dungee*, 520 S.E.2d 164, 171 (Va. 1999) (citation omitted). Courts look to the child's "age, intelligence, and experience" to decide whether he or she was capable of "appreciating the

4

nature of the danger and the peril associated with [her or] his conduct."[2]  *Endicott*, 348 S.E.2d at 279.  The presumption is rebutted as a matter of law when the evidence shows that "the child was *actually* aware of, and understood, the particular danger confronting him."  *Doe v. Dewhirst*, 396 S.E.2d 840, 842 (Va. 1990) (citation omitted).  Where the evidence does not establish that the child had actual knowledge of the danger, or where the evidence conflicts, a jury should decide whether the defendant has rebutted the presumption.  *Dungee*, 520 S.E.2d at 172-73.

Once the defendant rebuts the presumption, a party bears a second burden to prove that the plaintiff was contributorily negligent.  *Id.*  "'The standard of conduct to which a child must conform for his own protection is that of a reasonable person of like age, intelligence, and experience under like circumstances.'"  *Barker*, 275 S.E.2d at 616 (*quoting* Restatement (Second) of Torts § 464(2) (1965)).  "Ordinarily, a less[er] degree of care is required of an infant than an adult, but his responsibility is always to be measured according to his maturity and capacity, and determined by the circumstances of the case as shown by the evidence."  *Barker,* 275 S.E.2d at 616 (citations and quotations omitted).  "Whether a plaintiff's negligence is the proximate cause of his injuries is typically a jury issue."  *Dewhirst*, 396 S.E.2d at 843.

In assessing whether a defendant was negligent, the factfinder must find he or she breached a duty of care.  "The law is well settled that it is the duty of the defendant to exercise reasonable care to keep its premises in a reasonably safe condition and to warn persons invited to use its premises of dangers which are known to it and unknown to the invitee . . . ."  *Gall v.*

---

[2] Defendant notes that the analysis of age operates on a sliding scale as the child approaches 14, the age where the resumption against negligence ends.  13 Mich. Jur., Negligence, § 42, p. 561 (2007).  M.H.C.'s age of 11 does not manifestly sway this Court's analysis one way or the other.

*Great Atl. & Pac. Tea Co.*, 120 S.E.2d 378, 380 (Va. 1961). However, "such warning is not required where the dangerous condition is open and obvious, and is patent to a responsible person exercising ordinary care for his own safety." *Id.* Whether a hazard is open and obvious is a question generally left to a jury. *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997).

### A.     **Rebutting the Presumption**

In large part because M.H.C. is smart and the fence was visible and made of iron, Cheesecake Bistro suggests that M.H.C., as a matter of law, had to be aware of the danger confronting him when playing tag. At the time of the accident, M.H.C. was eleven years old and in a program for gifted children. He has a higher than average IQ and continues to take advanced classes. No one disputes the visibility of the fence, though dispute exists as to whether the spiked nature of the finials was obvious.

At the outset, the Court notes that it must consider more than just M.H.C.'s intelligence to determine whether Cheesecake Bistro has rebutted the presumption that M.H.C, as an eleven-year-old, was incapable of negligence under these circumstances. *See Dewhirst*, 396 S.E.2d at 843 (finding insufficient to hold as a matter of law that the presumption that a ten and one-half year old child was contributorily negligent, even where the child's mother testified that "he was bright and responsible").[3] The Court must consider M.H.C.'s "age, intelligence, and experience"

---

[3] Virginia is not alone in so holding. See *Pino v. Szuch*, 408 S.E.2d 55, 59 (W. Va. 1991) ("Merely showing that the child is a bright eight-year-old or does well in school does not rebut the presumption, and to hold otherwise would undercut its very foundation."); *King v. South*, 352 So.2d 1346, 1347 (Ala. 1977) ("The fact that an infant is shown to be bright, smart, and industrious is not sufficient to overcome the presumption of want of discretion.") (quotations and citation omitted)(emphasis removed).

to determine whether he actually knew of the danger posed by playing tag around the fence. *Id.* at 842.

Cheesecake Bistro suggests that its position favorably compares to *Norfolk & Portsmouth Belt Line Railroad Co. v. Barker*, where the court found a ten-year-old boy contributorily negligent because he understood the danger of jumping onto a moving train when he did so, and his foot subsequently was crushed. 275 S.E.2d at 616. The Court fails to see the similarity between the two cases. On the most fundamental level, the danger of playing tag near an iron fence does not readily compare to that of jumping onto moving trains. Moreover, in *Barker*, the child admitted jumping onto trains at the same location for one to two years before the accident, that his father and friends had warned him that jumping onto trains was dangerous, and that he was "'willing to take that chance'" on the day of the accident. *Id.* at 615.

Thus, the *Barker* court based its finding on the child's actual experience and familiarity with the danger that caused his injury, rather than a theoretical understanding that moving trains are dangerous. In contrast, M.H.C. stated that falling on a fence could cause injury, but did not do so "always" (M.H.C. Dep. 62:25-63:1). M.H.C. denies knowing that the fence at Cheesecake Bistro would cause such a serious injury. *See* M.H.C. Dep. 63:5-7 ("if you fall into a brick fence . . . you won't cut your arm open . . . . you might scrape up a little."); B. Caudle Dep. 30:18-22 (stating M.H.C. might have known that he would hurt himself by falling on a fence, "[i]f he realized it was a pointed fence post").[4] As to his experience and familiarity with the fence at

---

[4] Cheesecake Bistro suggests the spiked nature of the finials was obvious, or is of no moment. Citing a case where an adult skier hit an open and obvious pole at the base of a hill, Cheesecake Bistro suggests that the iron fence speaks for itself. *See Spangler v. Wintergreen Partners, Inc.*, 25 Va. Cir. 409 (Va. Cir. Ct. 1991). In *Spangler*, the plaintiff contended that the

Cheesecake Bistro, M.H.C. had eaten at Cheesecake Bistro before, but had never eaten in the outside patio area. No evidence suggests that M.H.C. played in similar areas or was warned about other similar hazards in the past.

Cheesecake Bistro also turns to *Doe v. Dewhirst* in suggesting that summary judgment is proper here. *Dewhirst* involved a ten-year-old who was hit by a car while exiting his father's parked car. *Dewhirst*, 396 S.E.2d at 843. In *Dewhirst*, the Supreme Court of Virginia found that the trial court erred in failing to instruct the jury as to contributory negligence. *Id.* Thus, to the extent Cheesecake Bistro relies on this case, *Dewhirst* commends a contributory negligence instruction, not summary judgment. Should Cheesecake Bistro wish to carry the decision beyond that, distinctions nonetheless suggest otherwise. In *Dewhirst*, the child's mother admitted that her son knew he should look for oncoming traffic, and the child admitted that he had not looked. *Id.* In this case, no one warned M.H.C. about the fence, and no evidence shows he knew the fence post would cause such a serious injury. *See id.* at 842 ("the trial court must conclude that the child was *actually* aware of, and understood, the particular danger confronting him.").

Instead, the Court finds persuasive the Virginia Supreme Court's discussion in *Endicott v. Rich.* In *Endicott*, the Supreme Court reversed the trial court's ruling as a matter of law that a thirteen-year-old child was contributorily negligent when he biked with a friend on Route 205, a

---

nature of the danger could not be discovered because the iron pole was covered with plastic PVC pipe. The court ruled the pipe was no less obvious than any other object, such as a tree.

Here, however, we deal with a child whom the Court must find was actually aware of the danger to rebut the presumption that a child is incapable of contributory negligence. M.H.C. testified he saw the finials on the fence, but he didn't "think there would be like a knife on top of each fence post," and he "didn't go up and like look at it and like poke the top of it." (M.H.C. Dep. 62:15-17, 22-23). His testimony creates a material dispute as to whether he was actually aware of the *particular* danger confronting him.

state highway. 348 S.E.2d at 279. When noticing an oncoming car behind him as he rode alongside his companion, the child attempted unsuccessfully to dart to the far side of the road to get out of the way. He swerved in front of the car, and it hit him. In that case, the child was an experienced bicyclist, knew of the danger of biking on Route 205, had been warned by his parents about the danger, and had been warned immediately before the accident by his friend's father that biking on the hard-surface portion of Route 205 was dangerous.

The Supreme Court in *Endicott* found the evidence insufficient to rebut the presumption as a matter of law because it failed to show that the child knew that swerving to avoid the accident was dangerous. The Supreme Court noted, the child "made a childish decision . . . . Interestingly, his twelve-year-old companion made the same decision." *Id.* Unlike *Dewhirst* where the child was warned about the particular action that led to the injury (looking for oncoming traffic when exiting a car), the child in *Endicott* had not been warned about the particular action that led to the injury (swerving the wrong way to avoid the accident), despite receiving other warnings.

In the present case, M.H.C. was running and playing tag with his two (also seemingly bright) friends when the accident occurred. This is precisely the type of childlike, impulsive, behavior for which the presumption exists. As did the companion cyclist in *Endicott*, the boys close to M.H.C.'s age made the same decision to play tag behind the restaurant. Although a bright young man, M.H.C. was not figuring a math problem on that day. M.H.C. instead engaged in quintessentially eleven-year-old conduct: playing tag. The presumption might apply here because eleven-year-olds commonly engage in horseplay that an adult would not. The Court simply cannot find, as a matter of law and considering M.H.C.'s age, intelligence, and

9

experience, that Cheesecake Bistro has established that M.H.C. was capable of understanding the danger and peril of playing tag near the iron fence at Cheesecake Bistro. The Court must allow a jury to decide whether Cheesecake Bistro has rebutted the presumption that an eleven-year-old is incapable of negligence.

B.     **Contributory Negligence and the Open and Obvious Defense**

After a defendant rebuts the presumption, he or she bears a second burden of proving that the plaintiff was contributorily negligent in order to prevail on summary judgment. *See Dungee*, 520 S.E.2d at 171. Cheesecake Bistro contends that because the fence was open and obvious, it had no duty to warn M.H.C. of the unsafe condition. Cheesecake Bistro maintains that a reasonable person would not believe that he or she could fall onto a wrought iron fence safely. *See id.* ("The evidence must show that the plaintiff's conduct did not conform to the standard of what a reasonable person of like age, intelligence, and experience would do under the circumstances for his own safety and protection."). The Court will not turn to these matters because the record does not clearly demonstrate that a child of M.H.C.'s age, intelligence, and experience would have known that playing tag behind the Cheesecake Bistro was a hazard that would cause injury. The Court also notes that "[w]hether a danger is open and obvious is usually a jury question." *O'Brien*, 491 S.E.2d at 715 (finding it proper for a jury to decide whether bolts of fabric leaning against a table constituted an open and obvious danger); *see also Spangler*, 25 Va. Cir. at 411 ("The Court is mindful that generally whether or not a hazard is open and obvious is an issue for the jury."). Accordingly, the Court DENIES Cheesecake Bistro's Motion for Summary Judgment.

### IV.  Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment.  (Docket No. 11.)

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Entered: February 8, 2008